894 F.2d 1337
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William F. SNYDER and Colleen F. Snyder, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 89-1276.
 United States Court of Appeals, Sixth Circuit.
 Feb. 1, 1990.
 
 USTC
 VACATED AND REMANDED.
 On Appeal from the United States Tax Court, Tax Court, 26335-84.
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and RICHARD F. SUHRHEINRICH, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a decision in which, following a two-day trial before a judge of the Tax Court of the United States, the Tax Court found deficiencies in the petitioners' federal income taxes for 1976 and 1977. The principal issue that the taxpayers raised in their petition to the Tax Court--an issue involving the proper treatment of reductions in pari-mutuel taxes that the State of Ohio imposed on wagers placed at a harness racing track in which petitioner-appellant William F. Snyder had a partnership interest--was resolved against Mr. Snyder and his wife in a memorandum opinion and findings of fact filed in July of 1988.
 
 
 2
 Entry of the Tax Court's actual decision was withheld for several months, pursuant to Rule 155 of the Tax Court's Rules of Practice, so that the parties could submit computations showing the correct dollar amount of the deficiencies under the resolution announced in the findings and opinion. In October of 1988 the Commissioner of Internal Revenue submitted computations showing a deficiency of $19,942.35 for 1976 and $84,170.54 for 1977. On October 31, 1988, the taxpayers submitted objections to the Commissioner's computations. In their October 31 filing the taxpayers contended--apparently for the first time--that they had net operating loss carrybacks from 1979 and 1980 sufficient to eliminate all taxable income for 1976 and 1977.
 
 
 3
 The Tax Court entered its decision in November of 1988, adopting the Commissioner's computation of the deficiencies. The taxpayers then moved the Tax Court to vacate and revise the decision, taking into account the alleged net operating loss carrybacks from 1979 and 1980. The motion was denied. This appeal followed.
 
 
 4
 The main issue on appeal is whether the Tax Court abused its discretion in declining to vacate the decision and eliminate any deficiencies for 1976 and 1977 on the basis of the alleged 1979 and 1980 loss carrybacks. With respect to the pari-mutuel tax reduction issue, the Commissioner now concedes error.
 
 
 5
 The taxpayers have acknowledged all along that the race track partnership made a mistake in its treatment of the pari-mutuel tax reductions, with the result that Mr. Snyder's share of the partnership income was under-reported. There was still a dispute at the trial level, however, because the Snyders advocated a treatment of the tax reductions that would have resulted in lower partnership income, at first, than would the treatment advocated by the Commissioner. The Commissioner now agrees that the Tax Court should have accepted the treatment urged by the Snyders, and the Commissioner acknowledges that the Tax Court decision must be vacated and the case remanded for that reason.
 
 
 6
 The Commissioner takes exception, however, to the contention that the Tax Court abused its discretion in declining to allow the loss carryback issue to be raised for the first time after the case had been tried and after the Tax Court had issued an opinion resolving the only issues presented by the taxpayers' petition. While conceding that the case must be remanded, the Commissioner urges that the remand should be for the limited purpose of recalculating the deficiencies for 1976 and 1977 without reference to the alleged loss carrybacks from 1979 and 1980.
 
 
 7
 On the record as it now stands, we cannot say that the Tax Court abused its discretion on the loss carryback issue. That issue was not raised in the taxpayers' petition, was not addressed at trial, and was not resolved in the Tax Court's opinion. When the taxpayers' Rule 155 filing was received, the Tax Court did not know any more about the taxpayers' 1979 and 1980 returns than we do. The tax court did not know whether any net losses existed for those years, and did not know whether any such losses had been carried forward and used in subsequent years. It does not seem to us that the Tax Court was required to let these matters be ventilated in a new trial.
 
 
 8
 Once the Tax Court's opinion had been issued, all that remained, under Rule 155, was for the parties to compute the deficiency "in accordance with the findings and conclusions of the Court," and for the court to enter its decision. Although Rule 155(b) gives the Tax Court discretion to hear arguments on the computations, Rule 155(c) explicitly provides that any such argument "will be confined strictly to consideration of the correct computation ... resulting from the findings and conclusions made by the Court, and no argument will be heard upon or consideration given to ... any new issues." (Emphasis supplied.) The Tax Court has traditionally done what Rule 155 says it will do; the court has traditionally declined to consider new issues in computational proceedings under the rule. See Harwood v. Commissioner, 83 T.C. 692, 694 (1984); Cloes v. Commissioner, 79 T.C. 933, 935 (1982).
 
 
 9
 If a petitioner wants the Tax Court to consider an issue not raised in the petition, not addressed at trial, and not covered in the opinion, Rule 161 does indicate that the petitioner may move for reconsideration of the opinion "with or without a new or further trial...." But any such motion "shall be filed within 30 days after [the] written opinion ... [has] been served," the rule provides, "unless the Court shall otherwise permit." Here the taxpayers let several months run after the opinion was served, and we do not think the Tax Court abused its discretion in declining to permit a de facto extension of the 30 days, see BASF Wyandotte Corp. v. Commissioner, 532 F.2d 530, 539 (6th Cir.1976), where the taxpayer waited several months after issuance of an unfavorable Tax Court opinion, moving for a further trial only after the decision itself had been entered. We held there, as we hold here, that it was not an abuse of discretion to deny the taxpayer's untimely attempt to get a further trial.
 
 
 10
 That having been said, we are constrained to observe that if the taxpayers in this case do in fact have unused net operating loss carrybacks, no reason is apparent to us why the Commissioner--who admittedly led the Tax Court into committing error before--should be unwilling to let the taxpayers' 1976 and 1977 liability be calculated in the pending proceeding, without requiring the taxpayers to institute a new proceeding. We assume that on remand the Tax Court will again give the parties an opportunity to submit computations under Rule 155, and we would urge both sides to see if they cannot work out an agreed computation under Rule 155(a). ("If the parties are in agreement as to the amount of the deficiency ... they, or either of them, shall file promptly with the Court an original and two copies of a computation showing the amount of the deficiency ... and that there is no disagreement....")
 
 
 11
 We turn now to what started out as the principal issue in this case. Here are the background facts.
 
 
 12
 Petitioner-appellant William F. Snyder was a partner in Northfield Park Associates, an Ohio partnership that operated a harness racing track in the Cleveland area. The partnership held an Ohio pari-mutuel wagering permit. As a permit holder, the partnership was subject to Ohio taxes based on the gross amounts wagered at the track; these taxes had to be remitted to the Ohio Tax Commissioner at the close of every racing day.
 
 
 13
 Under Ohio Rev.Code Sec. 3769.08, a track operator could obtain a reduction in its pari-mutuel tax obligation to cover a portion of the cost of capital improvements certified by the Ohio Racing Commission as having been completed. The statute prescribed a tax reduction equal to one-half of one percent of the total amount wagered, continuing for six years or until the total reduction reached 70% of the cost of the certified improvements.
 
 
 14
 In 1976 Northfield Park Associates was certified as having completed capital improvements that would entitle it to tax reductions totalling $409,599.29, assuming that this total could be reached in six years. In 1977 Northfield Park received a second certificate entitling it to continue the tax reductions until an additional $125,153.09 had been reached.
 
 
 15
 As soon as the first certificate was issued, the partnership's daily tax bill was reduced by half of one percent of the daily wagers. The daily reductions totalled $252,826.22 in 1976 and $281,886.16 in 1977. On the partnership's federal income tax returns, however, the partnership deducted the full amount of the Ohio pari-mutuel taxes that would have been due in the absence of any reduction, rather than the reduced amount actually paid. The difference, according to the petitioners, was accounted for as a reduction in the basis of the capital improvements.
 
 
 16
 It is undisputed that the partnership's treatment of the pari-mutuel tax reduction was wrong, and that the partnership income attributed to Mr. Snyder and the other partners was understated as a result. The question before the Tax Court was how the partnership ought to have handled the tax reductions. The Commissioner took the position that because the partnership used an accrual method of accounting, the total reduction potentially available to the partnership was attributable to the partnership as income in the year of certification. The Snyders presumably took the position they have taken on appeal, which is that the partnership could not realize gross income without realizing an "ascension of wealth;" the reduction in expenses was not "income," according to the Snyders, but a reduction in expenses. Under this view, the partnership should have deducted as tax expense items only those tax expenses actually incurred during the year in question.
 
 
 17
 The Tax Court adopted the position urged by the Commissioner. The court was apparently prepared to let the partnership deduct the full amount of the pari-mutuel taxes that would have been due in the absence of any statutory reductions, but in reliance on Spring City Foundry Co. v. Commissioner, 292 U.S. 182 (1934), the Tax Court held that the full amount of the potential reductions had to be accounted for as "income" in the year of certification. Thus for 1976, as the Tax Court saw it, the partnership should have been allowed to deduct pari-mutuel taxes in an amount $252,826.22 larger than the pari-mutuel taxes actually paid, but the partnership should have been charged with additional income in the amount of $409,599.29.
 
 
 18
 The Commissioner concedes that he and the Tax Court were wrong on this point, and the Snyders are right. The Commissioner now agrees that the proper treatment of the pari-mutuel tax reduction allowed by the certificates is simply "to reduce the deductions available to [the partnership] for its pari-mutuel tax obligations, which reduced deductions accrue as those taxes become due."
 
 
 19
 We agree too. Spring City Foundry merely teaches that when the right to receive an amount of money becomes fixed, an accrual basis taxpayer realizes income in that amount at that time. The case at bar does not involve any right on the part of Northfield Park Associates to receive an amount of money from the State of Ohio; it simply involves a right to start paying the state less in taxes than would have to be paid in the absence of the right. Spring City Foundry is not controlling, in this situation, because there is no "income" from the State of Ohio for the partnership to accrue.
 
 
 20
 The decision of the Tax Court is VACATED, along with so much of the Tax Court's opinion as is inconsistent with the views expressed herein, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable Richard F. Suhrheinrich, United States District Judge for the Eastern District of Michigan, sitting by designation